IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DLAYAL HOLDINGS, INC.,

        Plaintiff,

v.                                                                               Case No. 22-1265-JWB

RODGER GRACEY, MARNIE GRACEY,
and RODGER GRACEY *as Administrator of the
Estate of Betty Gracey*,

        Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' motion to dismiss or stay (Doc. 13) and Plaintiff's motion for leave to supplement the record with a recent state court filing (Doc. 22). The motions have been adequately briefed and are ripe for decision. (Docs. 14, 20, 21, 23.) For the reasons stated herein, Plaintiff's motion to supplement the record is GRANTED and Defendants' motion to dismiss the action (Doc. 13) is GRANTED.

**I. Background**

    **A. First Amended Complaint ("FAC").**

Plaintiff filed this action alleging diversity jurisdiction under 28 U.S.C. § 1332 and seeking declaratory relief.

According to the FAC, Dlayal Holdings, Inc. (hereinafter "Plaintiff" or "Dlayal") is a Delaware corporation with its principal place of business in the Cayman Islands. (Doc. 16 at 1.) Dlayal was "formed to hold and manage real estate in various states through ownership of membership interests in limited liability companies, including Oasis Direct Seven LLC ('Oasis')."

(*Id.*)  Plaintiff alleges that Dlayal is the sole member of Oasis. It further alleges that Dlayal is wholly owned by Pallais de Sienge, a Cayman Islands company. (*Id.* at 2.)

Rodger Gracey (hereinafter "Rodger") is a Kansas resident who claims a 25% ownership interest in Oasis. Betty Gracey, deceased, was Rodger's wife and resided in Kansas. Betty's estate claims a 25% ownership interest in Oasis. Marnie Gracey, the daughter of Rodger and Betty, is a Kansas resident who also claims a 25% ownership interest in Oasis. (The Graceys assert these claims in a related state court case, and further assert that the remaining 25% ownership interest is held by Marwan Al-Bawardi, who was married to Marnie.)

The FAC sets forth a complicated ownership trail for Oasis. It alleges that "Oasis was formed in 1998" and the original members of Oasis were ATC Trustees (Cayman) Limited (Trustee of the SOMA Settlement) and Fahad Al-Nowaiser (a citizen of Saudi Arabia) who each owned a 50% membership interest in Oasis. On November 2, 2000, ATC Trustees (Caymans) Limited transferred its 50% membership to ATC Trustees (Bahamas) Limited, who in turn transferred it in 2001 to Pallais de Sienge, which subsequently transferred it to Dlayal. (*Id.*) In 2018, Al-Nowaiser transferred his 50% membership interest in Oasis to Dlayal, thus allegedly making Dlayal the sole member and owner of Oasis. (*Id.*)

According to the FAC, "[i]n late 2000-early 2001" Oasis purchased the Indian Creek Ranch in Kansas. Plaintiff alleges that Al-Bawardi was "the designated manager for Oasis" at the time and that he "signed a power of attorney vesting R[odger] Gracey with authority to purchase the Ranch on behalf of Oasis." (*Id.* at 3.)  Plaintiff alleges Rodger was given the responsibility for managing the ranch and that he did so, with the benefit of additional powers of attorney subsequently executed by other Oasis managers, through June of 2019. Betty allegedly handled accounting for the ranch. In 2019, Oasis allegedly informed the Graceys that it planned to sell the

2

ranch, along with the adjacent land owned by its wholly-owned subsidiary, Owl Creek. (*Id.*) Oasis allegedly discovered accounting and other irregularities at that time, causing it to revoke Rodger's power of attorney and file suit against the Graceys in the District Court for Comanche County, Kansas, styled *Oasis Direct Seven, LLC v. Rodger D. and Betty Gracey*, Case No. 2019-cv-000007 (the "state litigation" or "state case"). The claims include breach of fiduciary duty, conversion, unjust enrichment, breach of contract, and an accounting. Rodger and Betty (or her estate) counterclaimed in the state case, claiming that they and their daughter Marnie each own a 25% membership interest in Oasis, and that Al-Bawardi owns the remaining 25% interest. Marnie was allowed to intervene in the state case. Dlayal is not a party to the state case.

In December 2020, Dlayal filed an action against the Graceys in Delaware Chancery Court seeking a declaration that Dlayal was the sole member of Oasis and that the Graceys are not, and have never been, members of Oasis. (Doc. 16 at 6.) In December 2021, the Delaware court dismissed the action for lack of personal jurisdiction over the Graceys. (*Id.*) In November 2022, Dlayal filed this action against the Graceys.

The FAC alleges that Dlayal has no adequate remedy at law and seeks a declaration that Dlayal is the sole member of Oasis, that the Graceys are not and have not been members of Oasis, that the Graceys have no legal claim to an ownership interest in Dlayal, and such further relief as the court deems proper. (*Id.* at 7.)

**B. Moton to Dismiss or Stay**

Defendants move to dismiss or stay the action pending resolution of the state litigation. Defendants contend all ownership questions are being addressed in the state case and that Dlayal is engaging in forum shopping by filing this action instead of intervening in the state action. They

3

contend the court should decline to exercise jurisdiction under the factors set forth in *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994).

In their motion, Defendants assert that Rodger, a veterinarian in Cheney, Kansas, "sought out the purchase of the nearby Ranch, not on behalf of Oasis or any other company, but as a family investment for him, his wife his daughter and his son-in-law," and that "[o]nly at the direction and upon the advice of his son-in-law, Al-Bawardi, did Rodger agree to assign the purchase of the Ranch to Oasis, trusting his own son-in-law's promise that each of the four of them would own [one-quarter] of the Ranch property." (Doc. 14 at 2-3.) Among other things, Defendants cite evidence that the Ranch was purchased with the proceeds of a promissory note of over $1.1 million dated February 15, 2001 in favor of Farm Credit Services of Central Kansas, and signed for Oasis by Al-Bawardi as "Manager" and by Rodger, Betty, and Marnie each "Individually." (Doc. 14-5 at 46.)

Defendants say they spent months seeking to add Al-Bawardi to the state action, successfully defended against Al-Bawardi's motion to dismiss, and obtained authorization for Marnie to intervene in the state action. Just before a hearing on the latter motion, Dlayal filed an action in Delaware seeking a determination of the membership of Oasis and asserting claims against Al-Bawardi. The Delaware court dismissed that action. Now approximately one year later, and while discovery in the state action proceeds, Dlayal files what Defendants contend is essentially the same complaint it filed in the Delaware action. Defendants contend Al-Bawardi represented to them that they would all equally share ownership of the ranch and that he had authority to do so "either individually or on behalf of Oasis." (Doc. 14 at 5.) Defendants contend they operated the ranch for two decades with that understanding and that "Al-Bawardi broke his promise to them and has tried to deprive them of their shared ownership of the Ranch, or

4

alternatively in the LLCs which hold title to the Ranch, after he decided to abandon Marnie and their three children in January 2018." (*Id.*) Defendants represent that their state filings include a piercing-the-corporate veil theory which asserts "that the LLCs involved, including Oasis, OCR, Dlayal, and Dlayal's sole member Pallais de Sienge, are owned by a Cayman Islands trust of which Al-Bawardi is the sole beneficiary," and that Al-Bawardi "directs these entities despite claiming that he has no ownership in them."[1] (*Id.* at 4-5.)

### III. Standards

This action is brought under the Federal Declaratory Judgment Act which provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). In *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), the Supreme Court explained that district courts are "under no compulsion to exercise...jurisdiction" under the Act. 316 U.S. at 494. The Supreme Court explained:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

---

[1] Among other things, Defendants cite a 1998 amendment to the formation certificate of Mariner Seven LLC, which states in part that the name of the company is now "Oasis Direct Seven LLC," and which was signed by Al-Bawardi as "Trustee" of the "M&M Trust." (Doc. 14-3 at 2.)

316 U.S. at 495. The district court should examine whether the lawsuit "can be better settled in the proceeding pending in the state court." *Id*.

The Tenth Circuit has adopted a five-factor test, referred to as the *Mhoon* test, for evaluating whether this court should exercise its discretionary jurisdiction over a declaratory judgment action:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) (quoting *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)). The Tenth Circuit has advised that a federal court is not required to refuse jurisdiction, but it "should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *Id*. at 1170 (citation omitted).

**IV. Analysis**

After a review of the *Mhoon* factors, the court finds that dismissal of this action is warranted. The first two factors concern whether the declaratory action would settle the controversy between the parties and would serve a useful purpose. These factors are typically reviewed together and involve examining the similarity between the parties and the issues. *Mid-Continent Cas. Co. v. Greater Midwest Builders, Ltd*., No. 09-2066-EFM, 2011 WL 5597329, at *3 (D. Kan. Nov. 17, 2011), *aff'd sub nom. Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc*., 685 F.3d 977 (10th Cir. 2012). Plaintiff's assertion that this action serves a useful purpose appears premised largely on the fact that Dlayal is not a party to the state case. (Doc. 20 at 9.) But Dlayal cites no reason why it could not intervene in the state action if doing so

was necessary to protect its interest in light of the issues raised there. Moreover, given the allegations made by Defendants in the state action – including that Al-Barwardi was authorized to promise them an interest in the Ranch and that Al-Bawardi is in actuality the sole beneficiary of the various entities involved – it is by no means clear that the declaratory relief sought by Plaintiff could be granted absent the addition of other parties to the action, or that the declaration would encompass all of the issues raised in the state action. These factors are neutral or weigh in favor of dismissal of the instant action.

The court next considers whether the declaratory remedy is being used for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata." *Mhoon*, 31 F.3d at 983. The filing of this action supports an inference that the federal action is being used for purposes of procedural fencing. The state action was filed in 2019 and the Delaware action (now dismissed) was filed in 2020. Years after initiation of the state litigation, and more than two years after Marnie first asserted in the state litigation that she and the other Defendants owned an interest in Oasis or the Ranch, Plaintiff filed this federal declaratory judgment action that overlaps with issues in the state action and that would clearly impact the interests of all of the parties to the state proceeding. Plaintiff justifies the federal filing on grounds that it was never made a party to the state action, but by the same token it does not explain why it could not have joined in that action. Plaintiff may have "no duty to submit to a foreign state court's jurisdiction when, as a non-resident, this federal forum is available," (Doc. 20 at 18), but neither does this court have a duty to exercise jurisdiction in a declaratory judgment action, particularly when the action was filed years after initiation of a state lawsuit involving the same core issues. *Brillhart*, 316 U.S. at 495 ("Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.") This factor favors dismissal of the instant action.

7

Moving to the fourth *Mhoon* factor, the court concludes the use of this declaratory action would increase friction between federal and state courts and encroach upon state jurisdiction. The state action has been underway for years now and discovery is well underway. The property giving rise to the controversy (and which underlies both actions) consists of ranch land in Kansas. The claims at issue in the state action and the issues underlying this action both require application of Kansas law rather than federal law. Plaintiff argues in part that dismissal is not warranted because "Dlayal is a distinct entity" and Kansas law does not permit the sort of reverse-veil-piercing allegedly claimed by Defendants. (Doc. at 8.) This argument is unpersuasive for two reasons. First, even from the limited record presented it is clear that the ownership allegations relating to Oasis involve a complex welter of individuals and trusts, with as many questions raised as are answered by Plaintiff's explanation of how it came to ownership of Oasis. (*See* Doc. 21-3.) Second, even if Defendants' allegations fail to state a valid claim under Kansas law, as Plaintiff contends, the state court is perfectly capable of addressing that issue in the state litigation. The court finds this factor weighs in favor of dismissal.

The final *Mhoon* factor is whether there is an alternative remedy which is better or more effective. The court finds this factor weighs in favor of dismissal of this action. By comparison to the instant action, the state litigation raises a broader scope of claims that include, but go beyond, the scope of allegations raised by Plaintiff. The court concludes the state court action presents a better and more effective vehicle to resolve the underlying issues pertaining to ownership of Oasis and the Ranch. To the extent Plaintiff believes its interests require intervention in the state action, it has cited no impediment to its ability to intervene in that suit.[2] The court notes that Plaintiff

---

[2] As Defendants point out, Plaintiff's asserted subsidiary Oasis is litigating in the state action at the apparent direction of Denise Anderson, who has been identified as President of Dlayal Holdings, Inc. and Manager of Oasis. (Doc. 14-15 at 9; Doc. 14-20 at 5; Doc. 16 at 31.)

advocates for a stay of the action, rather than dismissal, if the court concludes the *Mhoon* factors weigh in Defendants' favor. (Doc. 20 at 19.) That argument is supported only by Plaintiff's inability "to predict the course that the state-court case will take" and the possibility of a time bar to a future federal action. *Id.* This argument is speculative and unsupported, and the court concludes that dismissal of the instant action is the proper course in these circumstances.

## V. Conclusion

Plaintiff's motion to supplement the record (Doc. 22) is GRANTED. Defendants' motion to dismiss (Doc. 13) is GRANTED. The action is hereby DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED this 15th day of June, 2023.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE